UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

FRANKLIN H. PETTIFORD,

Defendant.

Criminal Action No. 06-162 (CKK)

**MEMORANDUM OPINION**
(September 20, 2006)

Defendant Franklin H. Pettiford is charged with one count of unlawful possession with intent to distribute 5 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii).  Currently before the Court is the Government's Pre-Trial *In Limine* Motion Regarding Rule 609 Admissibility (hereinafter, "the Government's Rule 609 Motion"), which seeks permission to impeach Defendant – should he choose to testify at his forthcoming trial – with his previous convictions for second-degree murder while armed, in violation of D.C. Code §§ 22-2403 and 22-3202 (1989), and for carrying a pistol without a license, in violation of D.C. Code § 22-3204(a) (1989).  Defendant opposes this request, contending that the Court should prevent the use of these previous convictions because (1) "since the actual conviction[s] [are] so old, [they] should be treated as [] remote conviction[s]," Def.'s Opp'n at 4 n.1; and (2) the prejudicial value of the convictions far outweigh their probative value, *id.* at 4.

Upon a searching examination of the Government's Rule 609 Motion, Defendant's Opposition, the relevant case law, and the entire record herein, the Court shall grant-in-part and deny-in-part the Government's Rule 609 Motion.  Specifically, the Court shall allow the Government to affirmatively impeach Defendant, should he choose to testify, with his conviction

for second-degree murder while armed, but shall place certain limitations on this line of inquiry; however, the Court shall not allow the Government to affirmatively impeach Defendant based upon his conviction for carrying a pistol without a license.  With respect to Defendant's conviction for second-degree murder while armed, the Government may cross-examine Defendant – should he choose to testify – concerning the fact that he was convicted of a felony offense and previously sentenced in 1991 to a term of seven to twenty-one years imprisonment, but the Government may not elicit the nature of the offense or any details as to the offense.

## I: BACKGROUND

### A.     *The Alleged Facts in the Case at Bar*

The following background discussion is based on the May 22, 2006 Detention Memorandum authored by Magistrate Judge Alan Kay in this case.  Metropolitan Police Department ("MPD") Officer Theodore Brosey, one of the two arresting officers in this case, offered testimony relating to the facts surrounding Defendant's arrest at the May 19, 2000 hearing before Magistrate Judge Kay.  Like Magistrate Judge Kay, the Court shall rely on the testimony elicited at the May 19, 2000 detention hearing solely for the purposes of resolving this pre-trial motion.

On Monday, May 15, 2006, while conducting surveillance at the Eastover Shopping Center in Maryland, law enforcement officers observed what appeared to be a hand-to-hand covert drug transaction involving Defendant, Franklin H. Pettiford, and a pedestrian who was a known drug dealer at approximately 2:20 p.m.  *See* 5/22/06 Detention Mem. Issued by Mag. Judge Kay at 2 (recounting the testimony of Officer Theodore Brosey).  According to surveillance, the pedestrian leaned into the car and handed a white substance to Defendant, who

in turn handed an unidentified item to the pedestrian.  *Id.*  When Defendant drove away from the

shopping center, the officer who had witnessed this incident ran the vehicle's tags and asked

marked patrol units to assist in stopping the vehicle.  *Id.*

Following this request, a marked MPD vehicle was dispatched to search for the 2003

Silver Ford Expedition bearing Virginia license plates that Defendant was observed driving.  *See*

*id.*; Crim. Compl., Ex. 1 (Stmt. of Facts) at 1.  At approximately 2:25 p.m., the dispatched MPD

vehicle saw the Expedition in the vicinity of the 4100 block of Livingston Road, S.E., near its

intersection with Atlantic Street, S.E., Washington, D.C.  *Id.*  The two MPD officers in the

dispatched vehicle then asked the dispatcher to run a registration check on Defendant's license

plates.  *Id.*  The registration check revealed that, contrary to the stickers on the license plate, the

registration had expired on April 30, 2006.  *Id.*  The officers then conducted a traffic stop of

Defendant's vehicle in the 200 block of Atlantic Street, S.E., Washington, D.C.  *Id.*  The officers

requested Defendant's license and registration for the vehicle, and ran the vehicle tag.  *Id.*  The

background search revealed that (1) Defendant did not have a valid license; (2) the car was

registered to an individual other than Defendant; and (3) that – as believed – the registration on

the vehicle had expired.  *Id.*

Defendant was asked by the officers to step out of the vehicle, and was placed under

arrest for operating an unregistered automobile.  *Id.*  The officers then conducted a search of the

Expedition incident to Defendant's arrest.  *Id.*  Their search of the vehicle's front center console

revealed a large clear sandwich bag containing a loose white rock substance, a 200-Z digital

scale, and four medium-sized clear zip-lock bags containing loose white rock substance.  *Id.*  The

white rock-like substance, which weighed approximately 23.3 grams, later tested positive for

cocaine base. *Id.* Upon this discovery, Defendant was also charged with possession with intent to distribute crack cocaine and transported to the Seventh District for processing. Defendant was formally indicted on June 13, 2006, in a one-count indictment charging him with unlawful possession with intent to distribute 5 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). *See* Indictment at 1.

      B.      *Defendant's Previous Conviction*

      On November 27, 1989, an individual named Luther Gavin was shot and killed in Washington, D.C. *See Pettiford v. United States*, 700 A.2d 207, 208 (D.C. 1997). In March 1990, Defendant in this case – Franklin H. Pettiford – was arrested in connection with Gavin's death, and charged with first-degree murder while armed in violation of D.C. Code §§ 22-2401 and 22-3203. *Id.* After waiving his rights, Defendant admitted to police officers that he was present at the murder scene and fired a gun into the air over the head of Mr. Gavin. *Id.* Defendant also admitted that he received a car as payment for his participation in the murder. *Id.* However, he maintained that another individual, Michael McIntyre, actually killed Gavin. *Id.* Subsequently, on September 14, 1990, Defendant pled guilty before the Honorable Ricardo M. Urbina to an information charging him with second-degree murder while armed, in violation of D.C. Code §§ 22-2403 and 22-3202, and to carrying a pistol without a license, in violation of D.C. Code § 22-3204(a), arising from the same factual context. *Id.*

      As part of his plea agreement, Defendant participated in various "debriefing sessions" with the Government. *Id.* During one of these sessions in January 1991, the June 30, 1989 murder of Angela Jones, a government witness, was discussed. *Id.* Defendant admitted that he and another individual, Jerry Rose, "had gone to Angela Jones' house the day before the murder

4

and had returned the next day to accomplish their objective of killing her." *Id.* at 213. Defendant admitted that he went to the murder scene to cover Rose's back, that he had a gun, and that he knew the purpose of the trip was to kill Ms. Jones. *Id.* at 211. Defendant maintained that "he had not fired his gun," and instead claimed that Rose "actually committed the murder." *Id.* at 208. As a result of this information, Defendant "entered into a superseding plea agreement that covered both the Jones and the Garvin murders." *Id.* This plea agreement, accepted by the trial court on June 10, 1991, provided that Defendant "would plead guilty to the first degree murder while armed in connection with the Angela Jones murder, and his pleas with respect to the Luther Garvin killing would remain the same as before (*i.e.*, second-degree murder while armed and carrying a pistol without a license)." *Id.*

At his sentencing on September 9, 1991, Defendant indicated that (1) he wanted to withdraw his guilty plea and (2) he wanted a new attorney – requests which were denied by the trial court. *Id.* at 209. Defendant was then sentenced to "twenty years to life imprisonment on the charge of first degree murder in connection with the Angela Jones murder, seven to twenty-one years imprisonment on the charge of second-degree murder in connection with the Garvin murder, to be served consecutively, and one year imprisonment for the charge of carrying a pistol without a license, to be served concurrently with the second-degree murder charge." *Id.* On appeal, Defendant's first-degree murder conviction was reversed, as the District of Columbia Court of Appeals concluded that "the trial court abused its discretion in refusing to permit the withdrawal of the plea to first-degree murder." *Id.* at 218. However, the Court of Appeals affirmed all other aspects of the judgment entered against Defendant. *Id.*

According to Defendant's parole officer, he was released from incarceration relating to these charges on December 3, 2004. *See* Gov't's Rule 609 Mot. at 4. The Government in this case now seeks permission to impeach Defendant Pettiford, should he choose to testify, with (1) his second-degree murder while armed conviction and (2) his conviction for carrying a pistol without a license, pursuant to Federal Rule of Evidence 609. *Id.*

## II: DISCUSSION

Federal Rule of Evidence 609(a)(1) provides, in relevant part, that "[f]or the purposes of attacking the credibility" of a criminal defendant, a prior conviction shall be placed into evidence if (1) "the crime was punishable by death or imprisonment in excess of one year under the law under which" the defendant was convicted; and if (2) "the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." Fed. R. Evid. 609(a)(1). However, even assuming that the Government is able to satisfy each of these two criteria for impeachment, one further check remains on its ability to introduce prior convictions against a criminal defendant or a witness at trial – the time limitations set out in Federal Rule of Evidence 609(b). Rule 609(b) provides:

> Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by the specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

Fed. R. Evid. 609(b). As part of the Rule 609(b) time calculation, two important dates must be

considered: (1) for the purposes of determining whether a conviction is more than ten years old, the question is whether ten years has expired at the time the witness testifies at trial, *see Trindle v. Sonat Marine, Inc.*, 697 F. Supp. 879, 881 (E.D.Pa. 1988) (collecting cases); and (2) under the rule, "release of the witness from confinement" means at the end of imprisonment, not the termination of a period of probation, *see United States v. Daniel*, 957 F.2d 162, 168 (5th Cir. 1992).

       1.    <u>Rule 609(a) – Nature of the Conviction</u>

The first step in the admissibility analysis under Federal Rule of Evidence 609 is to examine the nature of the previous conviction(s) in question. In order for a conviction to be used as an impeachment tool, the conviction itself must have been for a crime "punishable by death or imprisonment in excess of one year under the law under which" the witness or accused was convicted, Fed. R. Evid. 609(a)(1), or the conviction must have been for a crime "that involved dishonesty or false statement, regardless of the punishment," Fed. R. Evid. 609(a)(2). Under this analysis, "[p]rovable convictions are not limited to federal law"; rather, because "the federal catalog of crimes is far from being a complete one, . . . resort must be had to the laws of the states for the specification of many crimes." Fed. R. Evid. 609(a) advisory committee's notes (1972). Indeed, "Rule 609 convictions can be rendered in any forum, including federal, state, military, and foreign," Charles Alan Wright & Victor James Gold, 28 *Federal Practice & Procedure* § 6133, at 210-11 (1st ed. 1993), and "convictions under Rule 609 can be based on a jury verdict after a full trial, a judicial decision, or a plea of guilty," *id.* at 212.

As noted above, through a guilty plea entered on September 14, 1990 and reaffirmed on June 10, 1991, Defendant was convicted of second-degree murder while armed, in violation of

D.C. Code §§ 22-2403 and 22-3202 (1989), and carrying a pistol without a license, in violation

of D.C. Code § 22-3204(a) (1989).  It is clear that, considering the circumstances of these two

offenses, neither conviction would qualify as a crime "that involved dishonesty or false

statement" that would be admissible for use as impeachment under Rule 609(a)(2).  *See, e.g.*,

*United States v. Flaharty*, 295 F.3d 182, 190-91 (2d Cir. 2002) ("[m]urder generally is not a

crime of dishonesty," and noting that nothing about the murder in question "suggested that it

would in any way reflect on [the cooperating witness's] truthfulness"); *United States v. Belt*, 514

F.2d 837, 845 (D.C. Cir. 1975) (*en banc*) (assaultive crimes generally do not involve dishonesty

or false statement); *United States v. Millings*, 535 F.2d 121, 123-24 (D.C. Cir. 1976) (holding

that a conviction for carrying a pistol without a license was not a crime involving dishonesty).

Accordingly, the Government – in order to use either of Defendant's convictions as an

impeaching device – must establish that each respective conviction was for a crime "punishable

by death or imprisonment in excess of one year under the law under which" Defendant was

convicted.  Fed. R. Evid. 609(a)(1).  That is, the Government must show that each crime meets

the federal definition of a felony.  Charles Alan Wright & Victor James Gold, 28 *Federal

Practice & Procedure* § 6134, at 216-17 (1st ed. 1993).  Here, it is clear that Defendant's second-

degree murder while armed conviction qualifies under the Rule 609(a)(1) test, as D.C. Code §

22-3202(a)(1) (1989) allowed for life imprisonment, with a "mandatory-minimum term of not

less than 5 years."

It is less certain that Defendant's conviction for carrying a pistol without a license in

violation of D.C. Code § 22-3204(a) (1989) would qualify under Rule 609(a)(1).  Section 22-

3204(a) (1989), which has been drastically changed via various amendments since the time of

Defendant's conviction, *see* D.C. Code § 22-4504 (2001) (the current statute), provided at the time:

> No person shall within the District of Columbia carry either openly or concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license issued hereinafter provided, or any deadly or dangerous weapon capable of being so concealed. Whoever violates this section shall be punished as provided in § 22-3215, unless the violation occurs after he has been convicted in the District of Columbia of a violation of this section or of a felony, either in the District of Columbia or in another jurisdiction, in which case he shall be sentenced to imprisonment for not more than 10 years.

D.C. Code § 22-3204(a) (1989).  Section 22-3215 – referenced as the default punishment by Section 22-3204(a) – provided that "[a]ny violation of any provision of this chapter for which no penalty is specifically provided shall be punished by a fine of not more than $1,000 or imprisonment of not more than 1 year, or both."  D.C. Code § 22-3215 (1989).

Accordingly, a conviction for carrying a pistol without a license within the District of Columbia was, at the time the relevant activity occurred and when Defendant committed the offense, typically a misdemeanor, falling outside of the parameters of Rule 609(a)(1) for impeachment use.  *See Millings*, 535 F.2d at 122 (noting that a previous version of this statute fell outside of Rule 609(a)(1) for impeachment purposes).  This offense could only qualify for impeachment use under Rule 609(a)(1) if the circumstances of Defendant's conviction fell within the sentencing enhancement provision set out in the second sentence of D.C. Code § 22-3204(a) (1989).  It may be that Defendant's conviction for second-degree murder while armed, which occurred on the same day as his conviction for carrying a pistol without a license but was apparently entered *first*, could qualify as a prior felony under the second sentence of D.C. Code § 22-3204(a) (1989).  *See United States v. Deal*, 508 U.S. 129, 132-33, 113 S.Ct. 1993, 124

L.Ed.2d 44 (1993) (the term "conviction" most naturally refers to the finding of guilt by a judge or jury precedent to the entry of a final judgment of conviction; as such, multiple convictions can and do occur in a single judicial proceeding, and "earlier" convictions can be used as enhancements).  Because this possibility exists, the Court shall assume *arguendo* for the purposes of this motion that Defendant's Section 22-3204 (1989) conviction would qualify for impeachment under the crime "punishable by death or imprisonment in excess of one year" provision of Rule 609(a)(1).[1]

  2. <u>Restriction Against Remote Convictions</u>

   In addition to the restriction placed upon prior convictions by Federal Rule of Evidence 609(a)(1), each conviction must also pass the time limitations set forth in Rule 609(b) in order to be used as impeachment material.  The Advisory Committee Notes to Rule 609(b) stress that "[i]t is intended that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances."  Fed. R. Evid. 609(b) advisory committee's note (1974); *see also United States v. Lewis*, 626 F.2d 940, 950 (D.C. Cir. 1980).  "Federal Rule of Evidence 609(b) does not preclude admission of convictions older than ten years, it merely restricts their admissibility." *United States v. Brown*, 956 F.2d 782, 787 (8th Cir. 1992).  In other words, "Rule 609(b) carves out a specific class of prior convictions, that would otherwise be admissible under Rule 609(a), but are declared to be inadmissible unless additional considerations are met."  *United States v. Lewis*, 626 F.2d 940, 950 (D.C. Cir. 1980).

---

[1] Such a dilemma is ultimately rendered academic by the Court's decision, described below, to exclude Defendant's conviction for carrying a pistol without a license from Rule 609 impeachment for other reasons.

10

Ultimately, "Congress intended that trial courts be extremely cautious in admitting evidence of remote convictions." *United States v. Bibbs*, 564 F.2d 1165, 1170 (5th Cir. 1977), *cert. denied*, 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388 (1978). The general rule is one of inadmissibility. *United States v. Cathey*, 591 F.2d 268, 275 (5th Cir. 1979); *see also United States v. Pritchard*, 973 F.2d 905, 908 (11th Cir. 1992) (stating that "there is a presumption against the use of prior crime impeachment evidence over ten years old; such convictions will be admitted very rarely and only in exceptional circumstances"); *United States v. Beahm*, 664 F.2d 414, 417 (4th Cir. 1981) (stating that a district court should only depart from the "prohibition against the use for impeachment purposes of convictions more than ten years old very rarely and in exceptional circumstances"); *United States v. Shapiro*, 565 F.2d 479, 481 (7th Cir. 1977) (applying "exceptional circumstances" test). Courts should "take into account the need for using a prior conviction as an essential element of the probative value prejudicial effect balancing test mandated by Rule 609(b)." *Id.* Courts should be wary, because "[t]he danger in admitting stale convictions is that while their remoteness limits their probative value, their prejudicial effect remains." *Pritchard*, 973 F.2d at 908.

Here, it is clear that – despite Defendant's protestations, *see* Def.'s Opp'n at 4 n.1 – Defendant's conviction for second-degree murder while armed, in violation of D.C. Code §§ 22-2403 and 22-3203 (1989), is not remote. While Defendant first entered a plea of guilty to this charge on September 14, 1990, *see Pettiford*, 700 A.2d at 208, and reaffirmed this plea on June 10, 1991, *id.*, the conviction is not stale despite the apparent passage of 15 years. Importantly, Federal Rule of Evidence 609(b) provides that

> evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or *of the release of the witness from the confinement imposed for that conviction, whichever is the later date* . . . .

Fed. R. Evid. 609(b) (emphasis added). Here, Defendant was not "released" from the confinement imposed following his second-degree murder while armed plea until December 3, 2004. Accordingly, his second-degree murder while armed conviction is less than 3 years old for the purposes of the Rule 609(b) time-period calculation, falling safely within its restriction on remote convictions.

A more interesting question is posed by Defendant's simultaneous conviction for the carrying of a pistol without a license, in violation of D.C. Code § 22-3204(a) (1989). At his sentencing held on September 9, 1991, the trial court sentenced Defendant to a "one year imprisonment for the charge of carrying a pistol without a license, to be served *concurrently* with the second-degree murder charge." *Pettiford*, 700 A.2d at 209 (emphasis added). As such, *but for* the contemporaneous second-degree murder while armed plea, Defendant would have been released from imprisonment on the pistol charge sometime in 1992, which would have made the conviction remote for the purposes of the Rule 609(b) limitations period analysis. Or, to describe Defendant's situation in another way: given the *concurrent* nature of his pistol without a license sentence, Defendant technically was serving time for both his second-degree murder while armed and his carrying a pistol without a license convictions during the first year of his incarceration; following the initial year, his imprisonment was based solely upon his second-degree murder while armed conviction.

The existence of previous federal case law dealing with this situation in a Rule 609(b) time-period calculation context is virtually non-existent. However, the proper treatment can be gleaned, in part, from the legislative history of Rule 609(b). Prior to the enactment of Federal Rule of Evidence 609(b) in 1974, Congress considered a version of the subsection that would have excluded conviction evidence only if ten years had elapsed since the witness's release from confinement "imposed by his most recent conviction." Charles Alan Wright & Victor James Gold, 28 *Federal Practice & Procedure* § 6136, at 258-59 n.14 (1st ed. 1993). This proposed rule read:

> Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the release of the witness from confinement imposed *for his most recent conviction*, or the expiration of the period of his parole, probation, or sentence granted or imposed *with respect to his most recent conviction*, whichever is the later date.

*See* Fed. R. Evid. 609(b) advisory committee's notes (1974) (recounting rejected version) (emphasis added). However, the final, current version of Rule 609(b) looks to the date of the precise conviction sought to be introduced as impeaching evidence under Rule 609(a) – not the date of the "most recent conviction" – to determine the 10-year limitations period. Accordingly, it can be said that "[t]he rejection of [the proposed] version makes clear that confinement for one conviction has no effect on calculating the ten years applicable to another conviction." Charles Alan Wright & Victor James Gold, 28 *Federal Practice & Procedure* § 6136, at 258-59 n.14 (1st ed. 1993).

Based upon this reasoning, while Defendant was released from incarceration on December 3, 2004 following his convictions for second-degree murder while armed and carrying a pistol without a license, it would be improper to use that date as the starting point for the

13

remoteness calculation under Rule 609(b) for the pistol without a license conviction.  In short, December 3, 2004 does not represent the true "release of the witness from the confinement imposed for *that conviction*," Fed. R. Evid. 609(b) (emphasis added), as Defendant was only sentenced on September 9, 1991 to a one-year term in prison for his pistol without a license conviction, *Pettiford*, 700 A.2d at 208-09.  Defendant's contemporaneous second-degree murder while armed conviction, which carried with it an extensive sentence, cannot be used to "piggyback" his carrying a pistol without a license conviction into the 10-year limitations period set out in Rule 609(b).   As such, the Court – for the purposes of the Rule 609(b) analysis – shall consider Defendant's conviction for carrying a pistol without a license, in violation of D.C. Code § 22-3204(a) (1989), to be a "remote" conviction falling outside of the presumptive 10-year period set out in Federal Rule of Evidence 609(b).

       3.    <u>Balancing the Probative Value of Defendant's Prior Convictions With the Danger of Unfair Prejudice</u>

The final step in the Rule 609 analysis is for the Court to balance the probative value of Defendant's prior convictions, used as a tool for impeachment, against the danger of unfair prejudice.  Importantly, given the different Rule 609(b) time period determinations with respect to Defendant's two convictions, each conviction carries with it different balancing presumptions. Simply, "those convictions that were more recent should receive more favorable consideration than those that were over 10 years old." *Lewis*, 626 F.2d at 950.  Because Defendant's conviction for carrying a pistol without a license is considered more than 10 years old under Rule 609(b), it carries with it a "presumption against admissibility," as "[t]he balancing scale Congress has given the courts is weighted against a finding that the probative value of a more than 10-year-

14

old conviction *substantially* outweighs its prejudicial effect." *Cathey*, 591 F.2d at 275 (emphasis

added); *see also* Fed. R. Evid. 609(b) (noting that if a conviction is remote, it is only admissible

under the rule if "the court determines, in the interests of justice, that the probative value of the

conviction supported by the specific facts and circumstances substantially outweighs its

prejudicial effect").  In contrast, convictions that are less than 10 years old as determined by Rule

609(b), such as Defendant's second-degree murder while armed conviction, do not carry with

them this negative presumption.  Instead, to obtain admission, the Government simply must

convince the court "that the probative value of admitting this evidence outweighs its prejudicial

effect to the accused."  Fed. R. Evid. 609(a)(1); *see also* Fed. R. Evid. 403.

     In making the probative v. unfair prejudice determination, a district court "should

consider the following relevant factors:  (1) the kind of crime involved; (2) when the conviction

occurred; (3) the importance of the witness' testimony to the case; (4) the importance of the

credibility of the defendant; and (5) generally, the impeachment value of the prior crime."

*United States v. Butch*, 48 F. Supp. 2d 453, 464 (D.N.J. 1999) (citing *Gov't of the Virgin Is. v.

Bedford*, 671 F.2d 758, 761 n.4 (3d Cir. 1982) (Hunter, Circuit J.); 6 *Weinstein's Federal

Evidence* § 609.04[2][a]); *see also* 1 *McCormick on Evidence* § 42, at 144-45 n.9 (4th ed. 1992).[2]

"This list does not exhaust the range of possible factors, but it does outline the basic concerns

relevant to the balancing under Rule 609(a)(1)."  6 *Weinstein's Federal Evidence* § 609.04[2][a]

---

[2] The Sixth Circuit has crafted its own list of five relevant factors, which is similar to the one described above.  In *United States v. Sloman*, 909 F.2d 176 (6th Cir. 1990), the Sixth Circuit noted that courts should focus on:  (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue.  *Id.* at 181.

(citing *United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980)).  The Court, in applying

these steps, shall first turn to an analysis of Defendant's conviction for second-degree murder

while armed, and then shall examine his conviction for carrying a pistol without a license.

a.    *Defendant's Conviction for Second-Degree Murder While Armed*

Courts have been quite divided in analyzing a conviction similar to Defendant's 1991

conviction for second-degree murder while armed in the context of a Rule 609 motion.

Numerous courts have stressed that "[m]urder is not necessarily indicative of truthfulness," *Eng*

*v. Scully*, 146 F.R.D. 74, 78 (S.D.N.Y. 1993) (civil case) (excluding the murder conviction); *see*

*also Jolly v. Troisi*, No. 92 Civ. 5332(DAB), 2000 WL 620304, at *2 (S.D.N.Y. May 11, 2000)

(civil case) (same), and have excluded murder convictions from subsequent attempts at

impeachment under the theory that

> [a] murder conviction, on the other hand, has the potential to do more than create
> a credibility handicap.  It has the potential to so prejudice the jury that its
> weighing of all the factual issues in the entire case may be impaired.  Where a
> particular murder conviction is of little or no relevance to other issues in the
> underlying litigation, and there are other means available to undermine credibility,
> then it is a short step to find that the potential for prejudice from introducing the
> murder conviction will substantially outweigh its probative value.

*Tabron v. Grace*, 898 F. Supp. 293, 296 (M.D.Pa. 1995) (civil case) (excluding the murder

conviction).  Such considerations are certainly pertinent with respect to Defendant, as (1) his

second-degree murder while armed conviction is relatively old, having occurred in 1991; (2) the

underlying crime itself is not necessarily indicative of truthfulness; and (3) the introduction of the

second-degree murder while armed conviction could cause Defendant substantial unfair

prejudice, based on the nature of the offense, in his present trial for possession with intent to

distribute crack cocaine.

16

In contrast, other courts have approved of the use of a prior murder conviction for purposes of impeachment, even where the underlying case did not involve a similar act of violence. *See, e.g.*, *Hughes v. Couglin*, 101 F.3d 1392, 1996 WL 374998, at *2 (2d Cir. July 5, 1996) (civil case) (upholding a district court's decision to allow a murder conviction as impeachment in a Section 1983 case involving prison conditions); *Guzman v. Kelly*, No. 88-CV-1391(E), 1996 WL 722005, at *1 (W.D.N.Y. Dec. 11, 1996) (civil case) (allowing impeachment in an assault trial despite the fact that plaintiff's felony convictions included two murder counts). Courts have usually allowed murder convictions as impeachment under the theory that a defendant's "murder conviction is probative of his credibility since it removes any misconceptions that [he] is a model citizen." *Young v. Calhoun*, 85 Civ. 7584(SWK), 1995 WL 169020, at *4 (S.D.N.Y. Apr. 10, 1995) (civil case) (citing *Gora v. Costa*, 971 F.2d 1325, 1330 (7th Cir. 1992) ("The idea underlying Rule 609, whether right or wrong, is that criminals are more likely to testify untruthfully.")). Such impeachment could be important in this case, as the vehicle driven by Defendant was registered to an individual other than Defendant, leaving him with a plausible argument that he was unaware of the drugs in the Expedition's front center console, which apparently were not in plain view. Given that the credibility of Defendant, should he choose to take the stand and make such a defense, could be determinative, it also seems unfair to the Government to completely prevent it from presenting relevant impeaching evidence that would otherwise be admissible, absent unfair prejudice.

In light of the possible prejudice faced by Defendant and the Government's need to present such significant, relevant evidence in this case, the Court favors the compromise approach crafted by Judge Richard A. Posner in *Wilson v. City of Chicago*, 6 F.3d 1233, 1236-37

(7th Cir. 1993) (civil case), and employed by Judge Shirley Wohl Kram in *Young*, 1995 WL 169020 at *3-*4. Namely, the Government in this case shall be able to introduce evidence that Defendant was previously convicted of a felony offense, for which he was sentenced to a period of 7–21 years incarceration. However, evidence concerning the type of crime for which Defendant was incarcerated is not particularly relevant to the facts of this case, and is not necessary to impeach Defendant's credibility. *See Young*, 1995 WL 169020, at *4 (citing *United States v. Tomaiolo*, 249 F.2d 683, 687 (2d Cir. 1957) (stating that evidence of prior convictions should be no more detailed than necessary to impeach credibility)). Accordingly, the Government may cross-examine Defendant – should he choose to testify – concerning the fact that he is a convicted felon who was previously sentenced in 1991 to a term of seven to twenty-one years imprisonment, *see Pettiford*, 700 A.2d at 209, but the Government may not elicit any details as to the nature of the offense. *See Young*, 1995 WL 169020, at *4 (effecting similar compromise). In the end, such a compromise respects the general trend towards admissibility under Rule 609(a) and allows the Government to introduce relevant, probative evidence while at the same time cabining any possible unfair prejudice faced by Defendant. Such unfair prejudice will also be lessened because the jury will, of course, be instructed as to the limited relevance of a prior conviction.

        b.     *Defendant's Conviction for Carrying a Pistol Without a License*

As noted previously, in contrast to Defendant's second-degree murder while armed conviction, Defendant's 1991 conviction for carrying a pistol without a license must be

18

considered stale and/or remote for the purposes of Rule 609(b)'s time period analysis.[3] Accordingly, there is a presumption against admission of this conviction to impeach Defendant; instead, to garner admission, the Government must show "that the probative value of the conviction supported by the specific facts and circumstances *substantially outweighs* its prejudicial effect." Fed. R. Evid. 609(b) (emphasis added).

While the conviction for any felony must be considered at least somewhat probative of a defendant's credibility under Rule 609(a)(1), Defendant's conviction for carrying a pistol without a license is not particularly probative with respect to this case. Importantly, (1) Defendant's conviction is stale, having occurred over 15 years ago; (2) the underlying crime is not indicative of truthfulness, *see Millings*, 535 F.2d at 124; (3) Defendant was significantly younger at the time of the "carrying a pistol without a license" conviction, *see Pettiford*, 700 A.2d at 209 (Defendant testified that he "just got caught up in the fast lane, growing up with the older boys" and that he "just wanted to be a knucklehead and hang out with the older fellows"); and (4) the impeachment value of the crime at issue is fairly minimal. Moreover, the Government will already have the ability to attack Defendant's credibility using his felony conviction for second-degree murder while armed, with the limitations imposed by the Court. Finally, other than to suggest that all convictions are relevant to credibility, *see* Gov't's Rule 609 Mot. at 11-13, the Government has done little to show that the specific circumstances of Defendant's Section 22-3204(a) conviction carry with them probative value in this case or excuse the remoteness of the conviction. In short, the Government has failed to meet its burden to establish that the probative value of Defendant's

---

[3] This is, of course, assuming that the Government has met the first prong of the Rule 609 test – the Rule 609(a)(1) felony offense requirement. As discussed *supra* Section II(1), it is far from clear that Defendant's Section 22-3204(a) offense actually qualifies for impeachment.

stale conviction for carrying a pistol without a license "substantially outweighs" its prejudicial effect.  *See* Fed. R. Evid. 609(b).

As such, due to the negative presumption attaching to this stale conviction, the danger of unfair prejudice from its introduction, the above-described attenuating facts, and the lack of specific circumstances indicating why the Court should overlook the remoteness of the conviction, the Court finds that the Government has been unable to establish that the probative value of Defendant's conviction for carrying a pistol without a license "substantially outweighs" its prejudicial value.  Accordingly, pursuant to Federal Rule of Evidence 403, the Court shall prohibit the Government from affirmatively introducing evidence of the conviction as impeachment under Rule 609.  However, should Defendant choose to testify and affirmatively misrepresent his criminal history on direct examination, the Government may introduce evidence of his 1991 conviction for carrying a pistol without a license to correct the record and impeach Defendant.  *See Jolly*, 2000 WL 620304, at *2 (excluding conviction for murder under Rules 403 and 609, but noting that "the above ruling does not preclude use of Plaintiff's prior criminal history for impeachment in the event that Plaintiff falsely states his criminal history while testifying").[4]

### III: CONCLUSION

For the reasons set forth above, the Court shall grant-in-part and deny-in-part the Government's Rule 609 Motion.  Specifically, the Court shall allow the Government to

---

[4] Likewise, should Defendant choose to testify and misrepresent his criminal history on direct examination, the Court shall also permit the Government to introduce the substantive nature of his other 1991 felony conviction – i.e., his second-degree murder while armed conviction – to correct the record and impeach Defendant.

20

affirmatively impeach Defendant, should he choose to testify, with his conviction for second-degree murder while armed, but shall place certain limitations on this line of inquiry; however, the Court shall not allow the Government to affirmatively impeach Defendant based upon his conviction for carrying a pistol without a license.  With respect to Defendant's conviction for second-degree murder while armed, the Government may cross-examine Defendant – should he choose to testify – concerning the fact that he was convicted of a felony offense and previously sentenced in 1991 to a term of seven to twenty-one years imprisonment, but the Government may not elicit the nature of the offense or any details as to the offense.  An appropriate Order accompanies this Memorandum Opinion.


Date:   September 20, 2006


                                                                */s/*
                                             COLLEEN KOLLAR-KOTELLY
                                             United States District Judge