UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CR-06-162 (TFH) |
| | : | |
| v. | : | SENTENCING: FEBRUARY 27, 2007 |
| | : | |
| FRANKLIN PETTIFORD, | : | |
| | : | |
| Defendant. | : | |

_____

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits the following memorandum to assist the Court in fashioning an appropriate sentence in this case. In this memorandum, the Government addresses the defendant's claim that, in light of the D.C. Circuit's recent decision in United States v. Pickett, _ F.3d _, 2007 WL 445937 (D.C. Cir. Feb. 13, 2007), the defendant's sentence should be reduced because the statute and the Sentencing Guidelines make a distinction between powder cocaine and crack cocaine.

Based upon the points and authorities herein, the Government respectfully requests that, after considering the disparities between crack and powder cocaine the in the Guideline sentencing calculations, the Court find that a Guidelines sentence is appropriate in this case.

**I.      Factual Background**

On Monday, May 15, 2006, at about 2:25 p.m., the defendant was the driver and sole occupant of an SUV that was stopped in the 200 block of Atlantic Street SE, in Washington, DC. Officers stopped the defendant's vehicle because he was operating it with an expired Virginia registration. The defendant was placed under arrest for operating without a registration. A search of the vehicle's center console incident to the defendant's arrest revealed a plastic bag containing

what was confirmed by DEA analysis to be 18.8 grams of crack cocaine. Also recovered in the same console was a digital scale. When the defendant was arrested, he was on parole for a conviction in D.C. Superior Court. The defendant currently faces revocation of that parole.

The defendant was charged with Possession with Intent to Distribute 5 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii). In late September 2006, the defendant was tried before the Honorable Colleen Kollar-Kotelly. That trial ended in a mistrial when the jury deadlocked on October 2, 2006. On November 27, 2006, the case was re-tried before this Court. On November 29, 2006, the jury found the defendant guilty of the charged offense.

**II.    Argument**

The defendant argues that a sentence below the Guidelines range is warranted in this case. Specifically, the defendant argues that, given the characteristics of the defendant and the offense, a 20 to 1 ratio is appropriate in this case, rather than the 100 to 1 ratio embedded in the Sentencing Guidelines. Defendant's Memorandum, p. 4-5. In support of this position the defendant cites Pickett, id., _ F.3d _, 2007 WL 445937, in which the D.C. Circuit recently held that it was error for a sentencing judge to decline to consider the 100 to 1 crack to powder cocaine ratio in fashioning a defendant's sentence.

Here, even taking into consideration the disparity between the sentences for crack and powder cocaine embedded in the Sentencing Guidelines, the Court should sentence the defendant to a period of imprisonment within the Guidelines' range. Indeed, when considered along with the other factors spelled out in 18 U.S.C. § 3553, a sentence at the high end of the defendant's Guidelines' range is appropriate in this case. Accordingly, the Government requests that the Court impose of a sentence of 97 months imprisonment. Moreover, the Government requests that the

Court order that the defendant's sentence run consecutive to any other sentence that he may be made to serve.

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court ushered in a new era in federal criminal sentencing. By excising those portions of the Federal Sentencing Act that obligated judges to adhere to the Sentencing Guidelines, the Supreme Court put in place a sentencing regime under which the Guidelines are now merely advisory. Id., 543 U.S. 220, 246. This remedy was crafted to cure a Sixth Amendment defect caused by the mandatory nature of the Guidelines. Under the post- Booker system, "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Id. at 264-65. "[A] sentencing court is required 'to consider Guidelines ranges' applicable to the defendant, but is permitted 'to tailor the sentence in light of other statutory concerns as well.'" United States v. Coumaris, 399 F.3d 343, 351 (D.C. Cir.2005) (quoting Booker, 543 U.S. at 246). Hence, Booker's modification of the Federal Sentencing Act, by excising the mandatory Guidelines provisions, "'requires the sentencing court to consider Guidelines ranges . . . but . . . permits the court to tailor the sentencing in light of other statutory concerns as well . . . .'" United States v. Simpson, 430 F.3d 1177, 1186-87 (D. C. Cir. 2005) (quoting Booker, 543 U.S. at 246).

Booker requires judges to engage in a two-step analysis to determine a reasonable sentence. The "district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." United States v. Clark, 434 F.3d 684, 685 (4th Cir.2006) (quoting United States v. Hughes, 401 F.3d 540, 546 (4th Cir.2005)); see also United States v. Mickelson, 433 F.3d 1050,

3

1055 (8th Cir. 2006) ("[C]alculation of the appropriate guideline sentence is only the first step in sentencing decisions under Booker, for the court must also consider the § 3553(a) factors before making its ultimate decision."); United States v. Crosby, 397 F.3d 103, 113 (2d Cir.2005) ("[A]fter considering the Guidelines and all the other factors set forth in section 3553(a), [the sentencing judge should decide] whether (I) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence.").

18 U.S.C. § 3553(a) further instructs judges, "in determining the particular sentence to be imposed, [to] consider" the following factors (in addition to the Guidelines and the policy statements of the United States Sentencing Commission):

> the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes by the defendant, and provide the defendant with rehabilitation, education and training, and other correctional treatment;
>
> the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> the need to provide restitution to victims.

See 18 U.S.C. § 3553(a).

In this case, the defendant's total offense level under the Guidelines, that is, his base offense level with appropriate adjustments, is 26. See Presentence Investigation Report at p. 4. The

defendant falls into a criminal history category of III. See id., at p. 7. Based upon these criteria, the defendant's advisory Guidelines sentencing range is 78 to 97 months' imprisonment. See id., at p. 11.

Section 3553 specifically directs sentencing courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." See 18 U.S.C. § 3553(a)(6). Before Booker, the then-mandatory Sentencing Guidelines effectively foreclosed any consideration of this sentencing factor unless the Guidelines had not "adequately" taken the circumstances into consideration. See 18 U.S.C. § 3553(b)(1) (struck by Booker ). Because Congress had directed the Sentencing Commission to draft Guidelines that would avoid "unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct," see 28 U.S.C. § 991(b)(1)(B), the D.C. Circuit held that under the mandatory (pre-Booker) Guidelines regime, judges could not depart from the Guidelines based on a conclusion that the sentencing ranges failed to adequately take account of the similarity between crack and powder cocaine offenses. See United States v. Anderson, 82 F.3d 436, 438-39 (D.C. Cir.1996) (stating that "[n]on-Guidelines sentences [should] occur only where the Commission has completely overlooked a factor . . . or where the defendant's case manifests a circumstance that was considered but which is present in such an extreme form that the Guidelines' adjustment for it is inadequate").

Now that the Guidelines are advisory, however, judges are free to take sentence disparities into account when devising a punishment for a particular offender. Indeed, under the D.C. Circuit's recent holding in Pickett, it is error for a district judge to decline to consider such sentencing disparities.

In this case, even after considering the disparity between the sentencing ranges for powder and crack cocaine, as the Court must in light of Pickett, the Court should find that the penalties countenanced by the Sentencing Guidelines for crack cocaine are wholly appropriate. An examination of the history of Sentencing Guidelines' differential treatment between crack and powder cocaine supports such a finding.

Congress first began to differentiate crack from other forms of cocaine in the Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207. Employing a quantity-based penalty structure for mandatory minimum sentences, the statute created the "100 to 1 ratio" that distinguishes sentences for powder cocaine offenders from sentences for crack offenders. The amount of powder cocaine that is necessary to trigger the mandatory minimum five-year sentence (500 grams) is 100 times the amount of crack (5 grams) that is necessary to trigger the same minimum penalty. See United States v. John Doe, 412 F. Supp. 2d 87, 92 (D. D.C. 2006) (discussing the history of the 100 to 1 sentencing ratio); United States v. Smith, 359 F. Supp. 2d 771, 778 (E.D. Wis. 2005) (same); United States v. Tabor, 365 F. Supp. 2d 1052, 1057 (D. Neb. 2005) (same); United States v. Perry, 389 F. Supp. 2d 278, 289 (D. R.I. 2005) (same). "Using this ratio as a guide, in 1987, the Sentencing Commission set proportionate sentences for all powder and crack quantities, not just the statutory mandatory minimum sentences." John Doe, 412 F. Supp. 2d. at 92 (citing Tabor, 365 F. Supp.2d at 1057).

Since 1995, however, the Sentencing Commission consistently has recommended reducing or eliminating the differential. It has issued three reports, in 1995, 1997, and 2002, that have proposed various changes to the Guidelines quantity ratio, ranging from total equalization, that is, 1 to 1, to 5 to 1, and 20 to1. However, Congress has either expressly or implicitly rejected those

recommendations. Id. at 92. Separately, in 2000, legislation that would have lowered the ratio to 10 to1 (by making smaller amounts of powder cocaine subject to the mandatory minimums) passed the Senate but never received House approval. See United States Department of Justice Office of Legal Policy, Federal Cocaine Offenses: An Analysis of Crack and Powder Penalties (March 2002) at 18, (citing the Bankruptcy Reform Act of 2000, H.R. 833, 106th Cong. § 1772 (2000)).

The rationale for Congress's policy choice of a 100 to 1 ratio is based on a perception that crack use is more prone to lead to violence or other crime than is powder cocaine use, that it is more addictive than powder cocaine, and that its low cost and ease of manufacture makes it more dangerous because it is readily available to youths and other vulnerable groups. See Smith, 359 F. Supp. 2d at 778; Tabor, 365 F. Supp. 2d at 1056-57.

Here, the defendant urges the Court to sentence him below the Guidelines range based on the perceived disparity that exists between the penalties prescribed for a particular quantity of crack and the penalties for a similar amount of powder cocaine. As is noted in the defendant's Memorandum at p. 17, some judges in this District have taken account of the crack versus powder differential in post- Booker sentencing, and have imposed less than Guidelines sentences on crack offenders. However, after taking into consideration 100 to 1 ratio as required by Pickett, the Court should nevertheless conclude that the defendant's Guidelines range accurately reflects the appropriate sentence in this case.

A deviation from the Guidelines range, based solely on the conclusion that the disparity between the sentences for crack and powder cocaine is not warranted. It would do little to further the cause of sentencing uniformity. Although it may lessen the overall disparity between sentences for powder cocaine offenses and sentences for crack offenses involving similar drug quantities, such

a deviation would create greater sentencing disparity among offenders with similar records who commit similar offenses.

Additionally, none of the other sentencing factors identified in 18 U.S.C. § 3553(a), such as the nature and circumstances of the offense and the history and characteristics of the defendant, support any deviation from the Guidelines range in this case. The defendant argues that "[t]his is a simple street level drug case that made its way into [the] federal system for no reason other than the defendant happened to have stumbled into an investigation of another suspect. . . . In the absence of this unfortunate turn of events, [the defendant] would have certainly been prosecuted in the Superior Court and consequently would have had an advisory guideline range of well below the 60 month statutory mandatory minimum." Defendant's Memorandum at p. 4.

Contrary to the defendant's argument, in this case the defendant possessed a significant amount of crack cocaine, 18.8 grams. As was testified to by a narcotics expert at trial, the street value of that amount of cocaine on the wholesale level was between $700 and $900. When packaged for individual sales, as was evidenced by the presence of a digital scale in close proximity to the crack, the defendant stood to make a profit of several hundred dollars from the sale of that crack cocaine. The amount of crack cocaine in this case falls well within the amount routinely prosecuted not in D.C. Superior Court, but rather in United States District Court.

Moreover, the history and characteristics of the defendant do not warrant any deviation from a Guidelines sentence. When the defendant committed the instant offense, he was on parole, and had only recently been released from incarceration on that parole case. What is more, when he committed the instant offense, the defendant was on release in a similar offense that he committed less than three weeks earlier. Rather than warranting a departure from his Guidelines' range, the

8

defendant's significant criminal history calls for this Court to impose the maximum term of imprisonment contemplated by the Sentencing Guidelines, that is, 97 months, and to impose that sentence consecutively to any other sentence to which the defendant may be subjected.

Such sentence satisfies another of the § 3553 considerations, in that it would reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and protect the public from further crimes by the defendant.

Accordingly, the Government respectfully moves the Court to sentence the defendant to a term of imprisonment of 97 moths, consecutive to any other sentence.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

By:    /S/
EDWARD A. O'CONNELL
Assistant United States Attorney
D.C. Bar No. 460-233
Organized Crime and Narcotics Trafficking Section
555 Fourth Street NW, Room 4122
Washington, DC 20530
(202) 514-6997