# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued January 14, 2008      Decided February 26, 2008

No. 07-3027

UNITED STATES OF AMERICA,
APPELLEE

v.

FRANKLIN H. PETTIFORD,
APPELLANT



UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
FILED FEB 26 2008
CLERK

FILED
APR 2 1 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Appeal from the United States District Court
for the District of Columbia
(No. 06cr00162-01)

*Mary E. Davis*, appointed by the court, argued the cause for appellant. With her on the brief was Christopher Davis, appointed by the court.

*Patricia A. Heffernan*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *Roy W. McLeese, III*, Assistant U.S. Attorney.

Before: HENDERSON, RANDOLPH, and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

2

GARLAND, *Circuit Judge*: After a jury trial, defendant Franklin H. Pettiford was found guilty of possession with intent to distribute five grams or more of cocaine base. Pettiford contends that the district court that presided over his case erred in the following ways: (1) by admitting evidence of a prior drug trafficking offense at trial; (2) by denying his motion for a new trial based on newly discovered evidence; and (3) by denying his motion for judgment of acquittal on the ground that the evidence was insufficient to prove that the cocaine base found in his car was crack cocaine. We reject these challenges and affirm the judgment of the district court.

I

On May 11, 2006, Officer David Augustine of the Metropolitan Police Department (MPD) stopped a 2003 Ford Expedition because of a burned-out headlight. Defendant Pettiford was the sole occupant of the vehicle, and Augustine determined that its registration was expired. Augustine let the defendant go with a warning notice regarding the headlight.

Four days later, on May 15, 2006, MPD officers James Chastanet and Theodore Brosey stopped the same Ford Expedition. Pettiford was again the sole occupant. This time, the officers arrested Pettiford for driving an unregistered vehicle and searched the passenger compartment incident to the arrest. In the center console, located between the driver's and passenger's seats, Chastanet found a clear plastic bag. The bag contained: (1) loose "medium clusters of white, rock-like substances"; (2) a medium-size ziplock bag with "a large cluster of white, rock-like substance"; and (3) three smaller ziplock bags with "medium and small rock-like substances." 11/27/06 Tr. 129. The police also found in the console a digital scale, plastic gloves, and envelopes. The white, rock-like substances field-tested positive for cocaine base.

3

On June 13, 2006, a grand jury indicted Pettiford on one count of possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(iii). Pettiford's first trial began on September 26, 2006, but ended in a mistrial on October 2, 2006, when the jury was unable to reach a unanimous verdict. The case was re-assigned to another judge, and a second trial commenced on November 27, 2006. The second trial resulted in the conviction that is the subject of this appeal.

At trial, Officer Augustine testified that he had stopped Pettiford in the Ford Expedition on May 11, 2006, four days before his arrest. Officer Chastanet then recounted the events leading up to and following Pettiford's arrest on May 15, including the discovery of the plastic bag of drugs and the other paraphernalia in the center console of the Ford Expedition. Based on his prior experience in making crack cocaine arrests, Chastanet testified that he recognized the white, rock-like substances to be crack cocaine. The parties stipulated that a DEA chemist had analyzed the seized substances and determined them to be 71% cocaine base and to weigh a total of 18.8 grams. Detective Anthony Washington, who qualified as an expert witness in the distribution and use of narcotics, identified the substances seized from Pettiford's vehicle as "cocaine base which is also known as crack cocaine" in Washington, D.C. 11/27/06 Tr. 184. Detective Washington further opined that the packaging of the cocaine base and the presence of the digital scale and gloves were consistent with the wholesale distribution of crack cocaine. The ziplock bags, he said, contained "what we call eight balls, 3.5 grams which is an eighth of an ounce" of crack. *Id.* at 185. In that form, he said, the wholesale value of the drugs found in the Ford was $700; if broken down into $10 or $20 bags for street distribution, the same amount of crack would be worth between $2600 and $2800.

4

To buttress its proof that Pettiford knowingly possessed the crack cocaine found in the Ford's console, and that he specifically intended to distribute the drugs, the government moved pretrial to introduce evidence that Pettiford had also possessed cocaine with intent to distribute it just three weeks earlier, on April 27, 2006. Over Pettiford's objection, the court ruled that proof of the prior crime was admissible. Rather than have the government call live witnesses, Pettiford agreed that the prosecutor could read the jury a redacted transcript of his guilty plea to that prior offense in District of Columbia Superior Court. Appellant's Br. 15.

According to the Superior Court transcript that was read to the jury, the prosecutor in that case proffered and Pettiford agreed to the following facts. On April 27, 2006, MPD officers observed Pettiford engage in an apparent drug sale. They then watched him walk to a blue Mercedes, open the front passenger door, reach inside, bend over into the vehicle, withdraw, shut the door, and place something on the ground near the car. The officers subsequently stopped Pettiford and searched the car, which was registered in his name. In the Mercedes' center console, the police found 48 ziplock bags containing white, rock-like substances that field-tested positive for cocaine.

After the government concluded its case-in-chief, the defense presented its evidence, which consisted solely of the introduction of a certified "Vehicle Record" for the 2003 Ford Expedition. The Record stated that, as of April 30, 2006, the Ford Expedition was registered to a Marisa Ardelia Beam of Annandale, Virginia. Following closing arguments, the case was submitted to the jury.

On November 29, 2006, the jury convicted Pettiford of the crime charged in the indictment, and on February 27, 2007, the district court sentenced him to 86 months' incarceration.

5

Pettiford now appeals, leveling three attacks on his conviction. He contends that the district court erred: (1) by admitting evidence of the prior drug trafficking offense, in violation of Federal Rules of Evidence 404(b) and 403; (2) by denying Pettiford's motion for a new trial, which was based on the fact that his plea of guilty to the prior offense was later vacated as involuntary; and (3) by denying his motion for judgment of acquittal, which argued that the evidence was insufficient to prove that the cocaine base in the Ford Expedition was crack cocaine. Pettiford also asks that the case be remanded to the district court for resentencing in light of the U.S. Sentencing Commission's recent decision to lower the U.S. Sentencing Guidelines' sentencing ranges for certain crack cocaine offenses.

II

We first consider Pettiford's claim that the district court erred, under Rules 404(b) and 403, by admitting evidence that he had possessed with intent to distribute cocaine on a prior occasion.

A

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," but that it can "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." FED. R. EVID. 404(b); *see United States v. Pindell*, 336 F.3d 1049, 1056 (D.C. Cir. 2003). "We review a claim that a district court improperly admitted evidence under Rule 404(b) solely to determine whether the court abused its discretion." *Pindell*, 336 F.3d at 1056-57. We find no abuse of discretion here.

6

The district court admitted the evidence of Pettiford's prior crime to show that, in the instant case, he possessed the crack found in the Ford Expedition's console *knowingly* and/or *intentionally*, and that he did so with the specific *intent* to distribute it. These mental states are elements of the offense with which Pettiford was charged. *See* 21 U.S.C. § 841(a)(1) (making it unlawful to "knowingly or intentionally . . . possess with intent to . . . distribute" a controlled substance). And, as quoted above, Rule 404(b) expressly approves admission of prior crimes evidence to prove these elements. *See also United States v. Bowie*, 232 F.3d 923, 930 (D.C. Cir. 2000) ("Intent and knowledge are . . . well-established non-propensity purposes for admitting evidence of prior crimes or acts."). Accordingly, we have repeatedly approved the admission of such evidence under the Rule.[1]

Pettiford does not dispute these general propositions but argues that, in his case, "the other crimes evidence was not *needed* to prove possession" or state of mind. Appellant's Br. 8 (emphasis added). This is so, he maintains, because the police officers testified that they stopped the Ford Expedition on two separate days, and that on both occasions Pettiford was its only occupant. In addition, the government's drug expert testified that drug dealers keep their drugs close to them, and that the

---

[1] *See, e.g., In re Sealed Case*, 488 F.3d 1011, 1019 (D.C. Cir. 2007) (stating that evidence of the defendant's prior crack sale was admissible to prove knowledge and intent regarding crack found in the defendant's apartment); *United States v. Douglas*, 482 F.3d 591, 600 (D.C. Cir. 2007) (rejecting a challenge to the use of the defendant's prior arrest for selling crack at his trial for possession with intent to distribute crack); *United States v. Rogers*, 918 F.2d 207, 210 (D.C. Cir. 1990) (holding that the defendant's prior distribution of crack was admissible to prove that he had intent and knowledge regarding crack found in a gym bag).

7

packaging of the cocaine base and the presence of the digital scale and gloves were consistent with wholesale distribution of crack cocaine. If the jury believed these witnesses, Pettiford contends, this testimony was more than enough -- without resort to the prior crimes evidence -- to prove that he knowingly or intentionally possessed the crack with intent to distribute it.

Prior crimes evidence, however, does not become "irrelevant if the government's other evidence is sufficient to establish the elements of the offense." *Douglas*, 482 F.3d at 598 n.9. As the Supreme Court held in *Old Chief v. United States*, "evidentiary relevance . . . [is not] affected by the availability of alternative proofs of the element." 519 U.S. 172, 179 (1997). The fact that the government produced probative evidence of Pettiford's knowledge and intent does not preclude it from offering additional evidence to establish those elements beyond a reasonable doubt.

Pettiford insists that his case is on all fours with the decision in *United States v. Linares*, 367 F.3d 941 (D.C. Cir. 2004). In that case, in which the defendant was charged with being a felon in unlawful possession of a firearm, this circuit held that the district court erroneously permitted the government to present evidence that Linares had possessed a handgun years earlier. In the trial of the crime that was the subject of Linares' appeal to this court, eyewitnesses testified that he had held the gun in his hand and fired it. Referring to that testimony, the *Linares* court said:

> Given the evidence in this case, we do not understand how Linares' previous possession of a pistol makes it any more likely that he knowingly possessed a gun this time. In fact, it is hard to see how Linares could possibly have possessed the gun unknowingly, i.e., without being aware that he possessed it or without

8

> realizing that the object in his hand was a gun. . . . If the jury believed these eyewitnesses, then Linares possessed the gun knowingly; if it did not, then it should have acquitted based on the government's failure to prove possession rather than its failure to prove knowledge.

*Id.* at 946.

This case is substantially different from *Linares*. We have no doubt that there was sufficient evidence from which a jury could conclude beyond a reasonable doubt that Pettiford possessed the crack in the center console, and that he did so knowingly and with the requisite intent. But this is not a case in which the jury had to either believe the witnesses and conclude that the defendant knowingly possessed the crack with intent to distribute it, or disbelieve them and find that he did not possess the crack at all. Unlike the situation in *Linares*, the unlawfully possessed object was not in Pettiford's hand but in the console. Unlike the object in *Linares*, the object here was not one that the defendant could not help but recognize (like a gun), but rather a white, rock-like substance, which -- as we noted in *Linares* itself -- "a reasonable jury could conclude . . . [the defendant] believed . . . to be some 'innocuous substance.'" *Douglas*, 482 F.3d at 598-99 (quoting *Linares*, 367 F.3d at 951). And unlike the crime charged in *Linares*, the government had to prove not only that the defendant knowingly possessed the object, but also that he did so with the intent to distribute it. As we explained in *Douglas*, in the course of rebuffing a similar attempt to apply *Linares* to a prosecution for possession with intent to distribute crack, "'a reasonable jury could . . . conclude [] that although [the defendant] possessed the crack . . . , the government had failed to prove beyond a reasonable doubt that he intended to distribute it'" or that he knew it was a controlled substance. *Douglas*, 482 F.3d at 598 (alterations in original) (quoting

9

*Linares*, 367 F.3d at 952). Hence, the prior crimes "evidence is relevant to the permissible Rule 404(b) purpose of proving [Pettiford's] knowledge" and intent, and "the district court did not abuse its discretion in admitting" it. *Id.* at 599, 600.

B

Pettiford further argues that, even if the prior crimes evidence satisfies Rule 404(b), it is nonetheless inadmissible under Rule 403. *See Old Chief*, 519 U.S. at 182 (noting that evidence admissible under Rule 404(b) may be excluded under Rule 403); *Douglas*, 482 F.3d at 600. That rule provides that evidence, "[a]lthough relevant, . . . may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." FED. R. EVID. 403. "[B]ecause the trial court is in the best position to perform [that] subjective balancing[,] . . . its decision should be reviewed only for grave abuse." *Douglas*, 482 F.3d at 596 (internal quotation marks omitted).

Rule 403 "does not bar powerful, or even 'prejudicial' evidence. Instead, the Rule focuses on the 'danger of *unfair* prejudice,' and gives the court discretion to exclude evidence only if that danger '*substantially* outweigh[s]' the evidence's probative value." *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (emphasis in *Gartmon*) (quoting FED. R. EVID. 403). As we noted above, the 404(b) evidence in this case was highly probative of Pettiford's knowledge and intent. The crack cocaine in the Ford Expedition was not in plain view, but rather was hidden in the center console of a car registered to someone else. The fact that, just three weeks earlier, the police had found Pettiford distributing cocaine from the center console of another car made it substantially more likely that he knew that there was (and intended that there be) crack in the console of the Ford -- and that he intended to distribute that crack. *See Douglas*, 482 F.3d at 597 ("Evidence that [the defendant]

10

previously possessed and distributed crack cocaine to an undercover officer 'has a tendency to make' it 'more probable,' FED. R. EVID. 401, both that he knew the nature of the substance . . . he was charged with possessing [in the case at issue] and that he intended to distribute it." (citation omitted)).

As we acknowledged in *Douglas*, the admission of prior possession-with-intent-to-distribute evidence "almost unavoidably raises the danger that the jury will improperly 'conclude that because [the defendant] committed some other crime, he must have committed the one charged in the indictment.'" *Id.* at 601 (quoting *United States v. Crowder*, 141 F.3d 1202, 1210 (D.C. Cir. 1998) (en banc)); *see United States v. Rogers*, 918 F.2d 207, 211 (D.C. Cir. 1990) (same). But "[t]his danger . . . 'cannot give rise to a *per se* rule of exclusion.'" *Douglas*, 482 F.3d at 601 (quoting *Crowder*, 141 F.3d at 1210). And as in *Douglas*, the record of Pettiford's trial indicates no "'compelling or unique evidence of prejudice in this case.'" *Id.* (quoting *United States v. Mitchell*, 49 F.3d 769, 777 (D.C. Cir. 1995)).

Moreover, here, as in *Douglas*, the district court took the appropriate steps to minimize the danger that the jury would use the 404(b) evidence for an improper purpose.[2] Immediately after the prosecutor read the transcript of the plea in the prior case, the court carefully instructed the jury that it could consider that evidence only to help decide whether the defendant

---

[2]*See Crowder*, 141 F.3d at 1210 (noting that "the effect of a limiting jury instruction to protect the rights of the accused" is taken into account in assessing the balance of prejudice and probativeness); *see also Pindell*, 336 F.3d at 1057 n.9 (noting, in rejecting a Rule 404(b) challenge, that the district court had taken care to safeguard against the jury drawing improper inferences from the prior crimes evidence).

11

possessed the cocaine base knowingly, intentionally, and with specific intent to distribute it, and not for any other purpose. The court made clear that the defendant was "not charged . . . with any offense relating to the events of April 27, 2006," that the jury could "not consider this evidence to conclude the defendant has a bad character or that he has a criminal propensity," and that it could not consider it "in deciding whether the government has proved the defendant committed the acts constituting the charged offense." 11/27/06 Tr. 198-99. The court gave the same instructions before sending the case to the jury on the following day. In short, the district court took proper "'caution to guard the space between the permissible and impermissible inferences by instructing the jury to consider the evidence only for its proper purpose.'" *Pindell*, 336 F.3d at 1057 n.9 (quoting *Mitchell*, 49 F.3d at 777).

The only ground Pettiford offers for concluding that the 404(b) evidence was particularly prejudicial is that "the jury heard that Pettiford admitted that the allegations [regarding the prior crime] were true," which he believes was "very stinging evidence" in a short trial. Appellant's Br. 11. As Pettiford concedes, however, the only reason the jury heard his admission is that he "agreed to have the [redacted] transcript of his plea in Superior Court read to the jury" rather than have the government "call[] live witnesses." Appellant's Br. 4; *see* Appellant's Br. 15; *see also* Def.'s Mot. for New Trial at 1 (acknowledging that the prosecutor used the transcript "with the consent of the defense"). That agreement was a perfectly appropriate tactical decision aimed at limiting the impact of the prior crimes evidence: the transcript that the prosecutor read was brief (less than three pages) and described the events in a matter-of-fact way. There is nothing to suggest that it was more prejudicial than the kind of prior crimes evidence that this court has previously found admissible in other possession-with-intent-to-distribute cases. *See, e.g., Douglas*, 482 F.3d at 601; *Rogers*,

12

918 F.2d at 210. Accordingly, the district court did not abuse its discretion in permitting the use of the transcript.

III

As just noted, the government -- with the agreement of the defendant -- submitted its prior crimes evidence in the form of a transcript of Pettiford's Superior Court guilty plea. At the time Pettiford agreed to this procedure, he had pending in Superior Court a motion to withdraw that plea. Appellant's Br. 15. On January 29, 2007, two months after the jury found Pettiford guilty in the instant case, the judge in the Superior Court case vacated the plea as involuntary. *Id.*[3] On February 15, Pettiford moved for a new trial in this case pursuant to Federal Rule of Criminal Procedure 33, which permits the district court to grant a new trial "if the interest of justice so requires." FED. R. CRIM. P. 33. Pettiford's motion was based on the claim that his guilty plea constituted "newly discovered evidence." FED. R. CRIM. P. 33(b)(1). The district court denied the motion, and Pettiford contends that the denial was erroneous.

Under this circuit's *Thompson* test, a district court may grant a new trial on the ground of newly discovered evidence only if the following five conditions are met:

> (1) the evidence must have been discovered since the trial; (2) the party seeking the new trial must show diligence in the attempt to procure the newly discovered evidence; (3) the evidence relied on must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) of such nature

---

[3] It appears that the judge ruled the plea involuntary because Pettiford did not understand the penalties that he faced upon entering the plea. *See* 2/27/07 Tr. 7-8.

13

> that in a new trial it would probably produce an acquittal.

*United States v. Lafayette*, 983 F.2d 1102, 1105 (D.C. Cir. 1993) (quoting *Thompson v. United States*, 188 F.2d 652, 653 (D.C. Cir. 1951)). "In reviewing the District Court's decision on a new trial motion, we apply a deferential standard, and will reverse only if the court abused its discretion or misapplied the law." *Id.*

Questioning whether the vacation of Pettiford's plea was newly discovered evidence at all, the district court found that it failed multiple prongs of the *Thompson* test. Without casting doubt on the court's findings regarding the other prongs, we affirm its conclusion that there was no prospect that a new trial would probably produce an acquittal. Pettiford's contention is that, "had the jury known that the admission was not voluntary, it likely would not have given the 404(b) evidence much credit." Appellant's Br. 16. But in a new trial, the jury would not learn of the involuntariness of the guilty plea; indeed, the jury would not hear of the guilty plea at all. The only reason the government used the plea transcript in the first place was that Pettiford's counsel preferred a dry transcript to the live testimony of police officers who would testify that they watched him transact a drug deal and then found crack in the same location in which it was found in this case -- in the center console of an automobile. As the district court made clear, had the defendant not preferred the use of the transcript, it would have allowed the police officers to testify about what they personally saw on April 27, 2006. 2/27/07 Tr. 3, 9. And we agree with the court that there is no reason to suspect that, if there were a new trial, the live testimony would have less impact than the transcript had in the original trial. *Id.* 12-13. Indeed, the defendant's own tactical choice indicates that he, at least, believed the opposite. We conclude that the district court did

14

not abuse its discretion in denying the motion for a new trial.

IV

Pettiford also contends that the district court erred in denying his motion for judgment of acquittal, which argued that the evidence was insufficient to prove that the cocaine base found in the Ford Expedition was crack cocaine. Pettiford's indictment charged him with violating 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii), by possessing with intent to distribute five grams or more of "cocaine base." Under § 841, a "certain quantity of 'cocaine base' will trigger much stiffer penalties than an equivalent quantity of powdered cocaine -- that is, 'cocaine, its salts, optical and geometric isomers, and salts of isomers.'" *United States v. Powell*, 503 F.3d 147, 148 n.1 (D.C. Cir. 2007). Beginning with *United States v. Brisbane*, 367 F.3d 910 (D.C. Cir. 2004), this court has held that, to "uphold the higher penalties that § 841 prescribes for crimes involving 'cocaine base,'" the government must prove that the kind of cocaine base seized was either "smokable cocaine base or crack cocaine." *United States v. Johnson*, 437 F.3d 69, 71 (D.C. Cir. 2006); *see United States v. Baugham*, 449 F.3d 167, 171 (D.C. Cir. 2006).[4]

---

[4] As we recounted in *United States v. Eli*:

> In *United States v. Brisbane*, the court first rejected the possibility that, for purposes of the statute, "'cocaine base'. . . include[s] all base forms of cocaine." 367 F.3d 910, 913 (D.C. Cir. 2004). It then identified "two other options": "First, 'cocaine base' could mean only crack[,] . . . the only form of cocaine that is both smokable and widely available. . . . The second option is that 'cocaine base' means any cocaine that is smokable. . . . In addition to crack, [this] includes in the definition 'traditional' freebase cocaine and cocaine paste." *Id.* at 914. In the end, the *Brisbane* court concluded that it "need not choose between the[se] two

15

Our standard for reviewing a challenge to the sufficiency of the evidence to establish such a statutory element is narrow: We must accept the jury's guilty verdict if we conclude that "'*any* rational trier of fact could have found the essential element[] of the crime beyond a reasonable doubt.'" *United States v. Arrington*, 309 F.3d 40, 48 (D.C. Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Both Pettiford and the government stipulated that a DEA chemist had determined that the substance found in the center console was cocaine base. It is also agreed that the government did not offer evidence that the substance was smokable cocaine base. Thus, the only question before us is whether there was sufficient evidence that the cocaine base the officers found was crack cocaine.

Following *Brisbane*, we have held that the government may prove that cocaine base is crack cocaine in a variety of ways.[5]

---

options," because "the government did not prove that the substance distributed was smokable and it did not prove that it was crack." *Id.*

379 F.3d 1016, 1020 (D.C. Cir. 2004).

[5]*See, e.g.*, *Eli*, 379 F.3d at 1021 (upholding a conviction where the evidence established that the substance was "'rock-like,'" and a chemist indicated that it was "smokable" and properly identified as crack); *Baugham*, 449 F.3d at 183 (affirming a conviction where a police witness testified that the substance was a "'white rock substance,'" distinguished the substance from powder cocaine, and agreed that crack was "'vernacular slang for cocaine base'"); *United States v. Lawrence*, 471 F.3d 135, 139 (D.C. Cir. 2006) (affirming a conviction where police witnesses testified that the substance was a "large white rock substance" and that the sale "followed conventional practices for the sale of crack cocaine," and where an undercover

In *United States v. Johnson*, the government's evidence, which we found sufficient to sustain the defendant's conviction, was the following: a chemist testified that the substance recovered from the defendant's apartment was 55% cocaine base;[6] the seizing officers "testified that the recovered drugs were 'rock' or 'white rock,' a description that suggests crack cocaine"; a drug expert testified that paraphernalia found in the defendant's apartment, including a "'cocaine cooking kit'" and a "digital scale," could be used to make crack cocaine; and the same expert testified that the quantity and packaging of the drugs found in the apartment were consistent with the street sale of crack cocaine. 437 F.3d at 75. In *United States v. Powell*, the evidence was as follows: testimony that the seized substance was "'rock-like' and 'off-white' or 'yellowish' in color"; testimony by a chemist that it was 83% cocaine base; testimony by the seizing officer, experienced in crack cases, that the substance was crack; and testimony by an expert in the packaging and distribution of controlled substances that a photograph of the seized material showed crack and not powder cocaine. 503 F.3d at 148. "While not exactly overwhelming," we concluded that "the evidence was enough to enable a rational trier of fact to determine that [the substance] was crack cocaine." *Id.* at 149.

---

officer testified that the defendant gave him the substance in response to his request to buy crack).

[6]The *Johnson* court cited the opinion in *United States v. Eli*, which noted a DEA chemist's testimony that the concentration of cocaine base in crack cocaine is typically at least 50-60%. 437 F.3d at 75 (citing *Eli*, 379 F.3d at 1021); *see also Eli*, 379 F.3d at 1021 (holding that purity of 36-44% did not disqualify a drug as crack, in light of the chemist's testimony that he had previously tested crack of lower-than-typical purity).

17

This case is governed by *Johnson* and *Powell*. The chemist's report stated that the substances seized from the center console were 71% cocaine base. Based on his experience in "prior arrests dealing with crack cocaine," Officer Chastanet testified that the "white, rock-like substance" he seized from Pettiford's car was "crack cocaine." 11/27/06 Tr. 127. The government's narcotics expert described the process by which crack is made, noting that the end result is a "rock state form." *Id.* at 182. Examining a photograph of the seized substance, he opined that the "cluster of white . . . rock-like substance . . . was cocaine base which is also known as crack cocaine" in Washington, D.C. *Id.* at 181. The expert further opined that the cocaine base seized was packaged in amounts ("eight balls") that were consistent with the wholesale distribution of crack. *Id.* at 185. And he went on to say that the digital scale found in Pettiford's car was typical of equipment used in wholesale crack transactions. *Id.* at 187. The defendant offered no contrary evidence.

Pettiford argues that this evidence was insufficient because there was no testimony that the substance was smokable, and no testimony that the paraphernalia (scale and gloves) could *only* be used in the sale of crack. But *Johnson* and *Powell* make clear that, although useful, *see Powell*, 503 F.3d at 149 & n.2, "evidence about the substance's smokability" is not required to sustain a finding that it is crack, *Johnson*, 437 F.3d at 75; *see Powell*, 503 F.3d at 148.[7] Nor have we required the presence of paraphernalia (or packaging material), let alone proof that the paraphernalia could only be used in connection with crack. *See*

---

[7]*Powell* noted that a characteristic of crack cocaine is that it can be vaporized before the cocaine molecule decomposes, and hence can be smoked without losing the narcotic effect. 503 F.3d at 149 n.2; *see* Andrew C. Mac Nally, *A Functionalist Approach to the Definition of "Cocaine Base" in § 841*, 74 U. CHI. L. REV. 711, 718 (2007).

18

*Powell*, 503 F.3d at 149.

Because the evidence was sufficient for a reasonable juror to conclude beyond a reasonable doubt that the substance Pettiford possessed was crack cocaine, we affirm his conviction for violating 21 U.S.C. § 841(a) and (b)(1)(B)(iii).

V

Finally, Pettiford asks that we remand his case to the district court so that he may file a motion, pursuant to 18 U.S.C. § 3582(c)(2), for a reduced sentence in light of recent actions of the U.S. Sentencing Commission. Those actions lower the Sentencing Guidelines ranges for certain categories of offenses involving crack cocaine and permit district courts to apply the lower ranges retroactively. *See* Notice of Final Action Regarding Amendments to Policy Statement § 1B1.10, Effective March 3, 2008, 73 Fed. Reg. 217 (Jan. 2, 2008); Notice of Submission to Congress of Amendments to the Sentencing Guidelines, 72 Fed. Reg. 28558 (May 21, 2007). The government does not dispute that Pettiford may be eligible for consideration of a reduction in his sentence. But it maintains that we should simply affirm the judgment below; Pettiford can then file a motion for a reduced sentence pursuant to § 3582(c)(2). Neither party has articulated any substantive difference attending these alternative procedural dispositions. To the contrary, both agree that Pettiford can make the same arguments in favor of a reduction regardless of which procedural disposition we direct. Oral Arg. Recording at 7:37-7:43, 13:46-13:56.

It thus appears that resolution of this dispute is without practical consequence. In this case, moreover, the effective date of the Guidelines amendment that Pettiford intends to ask the district court to apply retroactively has not yet arrived. *See* 73

19

Fed. Reg. at 217. Hence, he is not yet eligible to be considered for a reduced sentence. We therefore affirm the district court's judgment and leave it to the defendant to file an appropriate motion when he becomes eligible.

## VI

For the foregoing reasons, the judgment of the district court is

*Affirmed.*